UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MARIAH LOPEZ f/k/a BRIAN LOPEZ,

                          Plaintiff,

          - against -

THE CITY OF NEW YORK, et al.,

                          Defendants.
-----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

**MEMORANDUM & ORDER**

05 Civ. 10321 (NRB)

     Plaintiff brings this action pursuant to 42 U.S.C. §
1983 and 42 U.S.C. § 1988 alleging violations of her civil
rights under the First, Fourth, Fifth, Eighth, and
Fourteenth Amendments to the United States Constitution,
and also seeking redress under New York State Executive Law
§ 296 et. seq. (the "NYS Human Rights Law") and the
Administrative Code of the City of New York § 8-107 et.
seq. (the "NYC Human Rights Law").  At the times relevant
to the allegations in the complaint, plaintiff was a pre-
operative transgender individual who was receiving hormones
as part of her effort to transition from Brian Lopez to
Mariah Lopez.  Plaintiff alleges that during a number of
short periods of incarceration at Rikers Island defendants
violated her rights by (1) housing her with male inmates;
(2) not permitting her to wear female clothes and

undergarments; (3) not permitting her to take female hormones; (4) subjecting her to verbal harassment and threatening behavior by defendant correction officers; (5) physically assaulting her; (6) observing verbal harassment, threatening behavior, and physical assaults and failing to intervene; (7) improperly placing her in a classroom for inmates who have disciplinary problems; and (8) allowing classmates to verbally abuse and physically assault her.

Defendants Commissioner Martin Horn, Warden Patrick Walsh, Warden Peter Curcio, Kaw Aung, M.D., Capt. Kevin Buck, C.O. Ronald Flemming[1], Principal Delores Jefferson,

---

[1] Defendants filed a Suggestion of Death on July 1, 2008 for named defendant Ronald Flemming. Neither party substituted Mr. Flemming's estate pursuant to Federal Rule of Civil Procedure 25(a)(1) within the requisite 90 days. Additionally, defendants filed an affidavit by C.O. Flemming dated March 21, 2008 in which he stated that he had never seen plaintiff. Further, defendants submitted the employment records of two other corrections officers, Capt. Joseph Turner and C.O. Michele Turner, as well as C.O. Flemming's records showing that although plaintiff alleged that all three were involved in an attack of her, none of them ever worked in the same facility at the time of the alleged attack. Despite this evidentiary showing in support of defendants' summary judgment motion, plaintiff never sought any relief under Federal Rule of Civil Procedure Rule 56(f) in order to depose C.O. Flemming or the other officers in an effort to rebut this evidence. Nor had plaintiff sought to depose C.O. Flemming or any other defendant during the two years this case was pending before the defendants moved for summary judgment. C.O. Flemming was dismissed from this action in the Court's November 19, 2008 Order, well after the 90 day period for substitution had expired. Plaintiff sought to reargue Mr. Flemming's dismissal and was granted an opportunity to explain her failure to meet the ninety day deadline and how she could succeed on her claim against Flemming even if the ninety day substitution requirement was excused. Plaintiff's submission did not provide a persuasive argument supporting either excusable neglect for failing to substitute Mr. Flemming or a conclusion that plaintiff could prevail at trial against Mr. Flemming. We also had concerns about the equity of permitting plaintiff to proceed against an estate when plaintiff had not taken discovery which would have preserved the defendant's testimony. Consequently, the Court denied plaintiff's

C.O. Theresa John, C.O. George Johnson, Capt. Ellen Patterson, Jane San Jose, M.D., and Capt. Robin Walker[2] now move for summary judgment on twelve grounds: (1) failure to exhaust administrative remedies; (2) vagueness of claims; (3) the absence of evidence of excessive force; (4) the absence of personal involvement by defendant Flemming; (5) the absence of evidence of deliberate indifference to plaintiff's medical need; (6) the absence of evidence of failure to protect plaintiff; (7) the absence of evidence of personal involvement by defendants Horn, Walsh, or Curcio; (8) the absence of evidence of municipal liability; (9) the failure of emotional injury claims due to lack of physical injury; (10) the legal unrecognizability of a denial of gay or female housing claim; (11) qualified immunity; and (12) the inappropriateness of continuing to hear the state and city law claims which pend to the dismissed federal claims.

For the reasons set forth below, defendants' motion is granted.

---

motion to seek relief from its November 19, 2008 Order in an Order dated December 3, 2008.

[2] Though other individuals were named in this lawsuit by plaintiff, plaintiff either failed to serve or identify them. Since 120 days has long past since the filing of this complaint, all defendants, excluding those named in Defendants' Motion for Summary Judgment are dismissed without prejudice and claims brought against them are not addressed in this opinion. There may, of course, be statutes of limitations bars which would alone preclude such claims.

## **Background**

### **I. Plaintiff's Allegations**

Plaintiff was incarcerated at Rikers Island fourteen times between August 17, 2001, and July 7, 2008.[3]

Plaintiff's complaint contains a host of claims. Broadly, defendant claims that each time she was incarcerated, she was required to be housed with male inmates, not allowed to wear female clothing, not given or given improper dosages of female hormones or testosterone blockers, subjected to verbal harassment and physical assault by defendant correction officers, and not protected from other inmates. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opposition") at 2-3.) She also claims to have suffered Post-Traumatic Stress Disorder and offers this as an explanation for failing to provide dates and details about the incidents she alleges in her deposition testimony. (Id.)

Plaintiff fails to provide specific dates for many of these assaults and oftentimes makes accusations against

---

[3] The dates of her incarcerations within the statute of limitations are as follows:   December 10-13, 2002; March 21-26, 2004; April 17-22, 2004; September 11-24, 2004; and June 16-17, 2005.   Defendant was previously incarcerated on August 17-22, 2001, January 8-22, 2002, April 11-15, 2002, and has since been incarcerated at least six times, most recently from April 17 through July 7, 2008.

4

unnamed defendants or officers who were not served in this case.

Specifically, despite her allegations of assaults and failures to provide medical care, plaintiff did not identify many of the corrections officers and doctors who allegedly committed the alleged wrongs.  In an effort to assist plaintiff in remedying this glaring deficiency, the Court ordered the city to gather photographs of corrections officers and medical personnel whose paths plaintiff might have crossed.  Thereafter, the City proceeded to take plaintiff's deposition and presented her with an array of photographs of corrections officers and medical staff to assist her in identifying the officers and doctors she intended to sue.  This deposition occurred on August 28, 2006.  Following this lengthy process, which included at least four time extensions from the Court, plaintiff identified some of the defendant corrections officers, for whom the city then accepted service.  Others, including Defendant Flemming, were served on the basis that they were the only officer with that particular name who worked in a facility where plaintiff was housed.  Another two depositions occurred on July 10, 2007, November 16, 2007. After plaintiff's depositions were concluded, plaintiff did not depose any defendants, despite numerous extensions of

the discovery period.    In total, this process lasted approximately one and a half years.    Thus, the pretrial record is limited to plaintiff's complaint, her deposition, and the document discovery, including some of plaintiff's medical records.

On March 21, 2008, defendants moved for summary judgment.

## Discussion

### I. Legal Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).    "Summary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication."    Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).

The movant has the burden of demonstrating that no genuine issue of material fact exists.    Adams v. Department of Juvenile Justice of the city of New York, 143 F.3d 61, 65 (2d Cir. 1998).    Such disputes exist "if the evidence is

such that a reasonable jury could return a verdict for the non-moving party." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248). If the movant meets this burden, the non-moving party must "adduce 'significant probative supporting evidence' demonstrating that a factual dispute exists." Yearwood v. LoPiccolo, No. 95 Civ. 2544 (DC), 1998 WL 474073 *3 (S.D.N.Y. Aug. 10, 1998) (citing Dzaba v. Haythe & Curley, No. 84 Civ. 1767 (JFK), 1996 WL 31156 *2 (S.D.N.Y. Jan. 26, 1996) (quoting Anderson, 477 U.S. at 249). Additionally, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Department of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

## II.  Analysis

### A.  Failure to Exhaust Administrative Remedies

Defendants initial position is that plaintiff failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

To satisfy the PLRA in this jurisdiction, an inmate must exhaust all steps of the New York City Department of Corrections' ("DOC") well-established five-step administrative Inmate Grievance Resolution Program ("IGRP") prior to filing his or her complaint. At Rikers, this process requires an aggrieved inmate to (1) file a complaint with the Inmate Grievance Review Committee ("IGRC"), (2) request a formal hearing before the IGRC, (3) appeal to the facility warden, (4) appeal to the DOC Central Officer Review Committee ("CORC"), and (5) appeal to the Board of Correction ("BOC"). See 7 NYCRR § 701.

The inmate must file his or her complaint within twenty-one days of the alleged grievance. See 7 NYCRR § 701.5(a)(1) ("An inmate must submit a complaint to the clerk within twenty-one (21) calendar days of an alleged occurrence on an Inmate Grievance Complaint Form (Form #2131). If this form is not readily available, a complaint may be submitted on plain paper.") Courts have held that complaints submitted after the appropriate date are time-barred. Wright v. Morris, 111 F.3d 414, 417 n.3 (6th Cir. 1997) ("It would be contrary to Congress's intent in

8

enacting the PLRA to allow inmates to bypass the exhaustion requirement by declining to file administrative complaints and then claiming that administrative remedies are time-barred and thus not then available.").

Here, plaintiff never spent more than fourteen days in prison during the five times relevant to this complaint. Once she left prison, plaintiff was not required to exhaust her administrative remedies under the PLRA because she was not a prisoner under the language of the Act. Greig v. Goord, 169 F.3d 165 (2d Cir. 1999) (holding that litigants who file prison condition actions after release from confinement are no longer prisoners for purposes of 42 U.S.C. § 1997e(a) and thus do not need to satisfy its exhaustion requirements). See also Mabry v. Freeman, 489 F. Supp. 2d 782, 784 (E.D. Mich. 2007) (holding that "the PLRA's exhaustion requirement [does not] appl[y] to a former prisoner whose claim arose while he was incarcerated").

Defendants rely on Berry v. Kerik, 366 F.3d 85 (2d Cir. 2003), for the proposition that plaintiff was required to file grievances while at Rikers and that plaintiff's failure to file grievances warrants the case's dismissal with prejudice. However, the Berry case is inapposite for two fundamental reasons. First, unlike the plaintiff here,

9

Berry was in jail at the time he filed his complaint. Second, plaintiff was never in jail for a period greater than the length of time that an inmate has to file a grievance, i.e. for twenty-one days after any of the alleged incidents.  Often, plaintiff was incarcerated for just a few days and never more than fourteen.  In contrast, Berry remained in jail for more than twenty-one days after the relevant incidents alleged in his case and oftentimes for months afterward.  Therefore, Berry could have filed his grievances while in jail within twenty-one days.

Thus, we hold that plaintiff did not need to exhaust her administrative remedies under the grievance procedure because (1) she was released from jail before the 21-day time limit had elapsed and (2) once she was released from jail, she was not a "prisoner" subject to the PLRA. Summary judgment on the issue of exhaustion is therefore denied.

### B.  Vagueness

Defendants argue that plaintiff's claims of excessive force and deliberate indifference to her medical needs are vague since plaintiff failed to provide sufficient evidence or testimony specifying the names of defendants involved in the alleged conduct, dates and times of the events, and factual details.  Whatever might have been the merits of

10

this argument at the initial pleading stage, the vagueness issues --or the lack thereof-- in the original complaint are subsumed by the more rigorous standard of summary judgment. The degree of specificity of plaintiff's complaint will be one factor we consider as we address the sufficiency of her claim to withstand defendant's summary judgment motion.

### C. Plaintiff's Substantive Claims

Plaintiff does not specify in her pleading or otherwise precisely which claims she is bringing against which named defendants. Thus, we have searched plaintiff's complaint and deposition to extract the allegations against each defendant. We have found it helpful to group plaintiff's claims according to the occupation of defendants. We also set out the relevant legal standard before addressing the claims defendant by defendant.

### i. Claims against Officer Defendants

The bulk of the claims alleged against the correctional officers named in this action involve claims of excessive force. The Eighth Amendment, applied to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment. Sims v. Artuz,

11

230 F.3d 14, 20 (2d Cir. 2000).[4]    "The core judicial inquiry" for claims of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 508 (quoting Hudson v. McMillian, 503 U.S. 1, 7-8 (1992). There is an objective and subjective component to this inquiry. Id.  The objective component is met if it is "shown that the deprivation alleged is objectively sufficiently serious or harmful enough." Jean-Laurent, 540 F. Supp. 2d at 509 (citing United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).  "[T]he victim does not [have to] suffer serious or significant injury provided that the amount of force used is more than de minimis, or involves force that is repugnant to the conscience of mankind."  Id. The subjective component requires that a defendant has a "sufficiently culpable state of mind . . . shown by actions characterized by wantonness."    Walsh, 194 F.3d at 49 (citing Hudson, 503 U.S. at 20).  However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

---

[4] The same standard of law applies to excessive force claims brought under the Fourteenth Amendment by pre-trial detainees and under the Eighth Amendment by sentenced prisoners.  United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999).

constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

### a. Capt. Kevin Buck

Plaintiff does not allege, in her Complaint or her Opposition, excessive force or deliberate indifference to plaintiff's medical need or safety by defendant Buck. In fact, plaintiff does not allege anything at all against defendant Buck. One short reference to defendant Buck was found in Plaintiff's November 16, 2007 Deposition:

> Physical, there is the time in the clinic where I was instructed after Captain Buck ordered me to go to the clinic because I was having chest pains and I needed my hormones as well. That's the time where I got - oh, shit, excuse me - well, one of the photographs I just remembered where I saw one of the women from and she was in the clinic that day.

(Pl. Nov. 16, 2007 Dep. at 42.) Nothing here provides any evidence that Capt. Buck violated any of plaintiff's federal or constitutional rights. Consequently, we grant summary judgment in favor of defendant Buck on all grounds.

### b. C.O. Theresa John

Plaintiff does not allege, in her Complaint or her Opposition, any specific excessive force or deliberate indifference by Theresa John. She in fact does not make any specific allegations against C.O. John.

13

In her deposition, plaintiff states:

> Q: Do you know that person's name?
> A: I do, C.O. John – do you realize you
> have her name.   Anyway, I could tell
> you she was the steady A officer in C-
> 73   gay   housing.       Horrible   to
> transgender   inmates,   absolutely
> positively horrible.   She infracted an
> ex-boyfriend of mine for touching me on
> the   shoulder   when   we   were   in   Rikers
> Island.   Threatened inmates, she would
> call other C.O.'s to harm them.   Just
> really the crème of the crème of the
> batch.   She is really bad.
> Q:  Did she ever physically touch you?
> A: No she did not.
> Q:   Did   she   ever   witness   anyone
> physically touch you?
> A: Yes?
> Q: Who did she witness physically touch
> you?
> A:   There   was   a   search   that   occurred
> while   on   her   shift   and   I   was   in   the
> middle   of   a   confrontation   with   one   of
> the   officers   and   she   wasn't   one
> because,   you   know,   they   come   with   a
> team   of   them.   She   wasn't   in   their
> team, she is a steady officer, but when
> the male officer was in front of me, he
> nudged   my   head   and   pushed   me   in   the
> cell.   She   was   standing   right   there,
> that's   when   they   closed   the   cell   and
> the   search   was   over.   I   had   indicated
> to   her   that   I   wanted   to   speak   to   a
> captain.   She   has   an   accent   and   she
> replied   just   real   nasty,   "you   are   not
> seeing an F'in captain, I run this" and
> blah blah blah.

(Pl. Nov. 16. Dep. at 31-32.)   She additionally makes a
claim that a C.O. John or Johnson was "verbally abusive."
(Pl. Aug. 28, 2006 Dep. at 11.)   We will assume that these
references are to the same person for the purposes of this

14

summary judgment motion.   No dates were given for either incident.

As plaintiff acknowledges that C.O. John never physically touched her, there is no basis, as a matter of law, for plaintiff to maintain an excessive force claim against her.   However, some portions of plaintiff's deposition could be construed to suggest the possibility that defendant John was deliberately indifferent to alleged excessive force by the male corrections officers.   This claim fails for two reasons.   First, the facts alleged by plaintiff above do not make out a cognizable excessive force claim.   Second, assuming, arguendo, that the unidentified male corrections officer's "nudge" and "push" was excessive force, defendant John cannot be held liable for the unidentified officer's actions.

First, plaintiff's recounting does not allege facts to sustain a conclusion that the male officers used force "maliciously and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 7 (1992).   Further, as plaintiff alleges no injuries resulting from the unidentified male officer's alleged force, any harm is simply not serious enough to reach a constitutional dimension.   See Roman v. Howarth, 998 F.2d 101, 105 (2d

Cir. 1993); see also Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

Second, while as a general rule, a law enforcement official can be held liable for failing to intervene in a situation where excessive force is being used, the absence of excessive force and the circumstances as recited by plaintiff preclude such a finding here. Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)). "Liability may only attach when (1) the officer had a realistic opportunity to prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Id. (citations omitted). Here, defendant John would not have had a realistic opportunity to prevent the unidentified male officer's "nudge" or "push" of plaintiff. The event, although vague, described is brief and does not approach the sort of repetitive beating that could give rise to an opportunity for defendant to intervene.

Consequently, there are no facts upon which a reasonable jury could find in favor of plaintiff for any of the claims she brings against defendant John, and,

accordingly, summary judgment is granted in favor of C.O. John.

### c. Captain Robin Walker

Plaintiff's complaint does not allege any excessive force or deliberate indifference claims against defendant Walker. Contradictory references about a Captain Walker are made in Plaintiff's depositions at various times. Defendant identified someone in a photo lineup marked D-34 as Captain Walker. (Pl. Nov. 16, 2006 Dep. at 24). Among the defendants sued is Captain Robin Walker. Plaintiff identified photo D-34 as Captain Walker during her deposition. However, plaintiff had nothing negative to say about the Captain Walker she identified. Indeed, Plaintiff's description of this individual was entirely positive. Plaintiff notes that this Captain Walker never touched her and describes this Captain Walker as "exceptionally professional." (Id. at 24-25). Later, she describes a Captain Walker who allegedly ignored plaintiff while her male cell-mates threw shoes at her and "jumped" her. (Id. at 43-45.) Plaintiff explains this contradictory evidence by stating that "[i]t would appear that one of the ACCs [Assistant Corporation Counsels] who handled this case identified the wrong Capt. Walker." (Pl. Resp. to Defs.' Local Rule 56.1 Statement ¶ 14.) However,

despite being provide the opportunity to do so, at no time does plaintiff clarify which Capt. Walker, if Robin Walker is in fact either of them, she alleges wrongdoing against. Furthermore, plaintiff fails to make clear when this incident with Captain Walker occurred.   Plaintiff does state that the Captain Walker identified by the ACC's is the "wrong Capt. Walker."   Thus, plaintiff acknowledges that Robin Walker is not the Walker alleged to have witnessed plaintiff's alleged injuries.   On the facts present in the record, even taken in a light most favorable to plaintiff, no reasonable jury could hold Robin Walker liable for any violation of plaintiff's federal or constitutional rights.

### d. George Johnson

Plaintiff's allegations against defendant Johnson are as follows:

> Q: D11, do you recognize that person?
> A: Yes, Johnson.
> Q: and can you tell me whether that individual ever touched you physically?
> A: Yes.
> Q: And can you tell me if it was during the period relevant in the complaint that is December of or rather August of 2001 through June of 2005?
> A: Yes
> Q: And can you tell me how he touched you?
> A: There were more than one incidents [sic]. He smacked me on the back of my head, he pulled my hair, there is more

18

than one incident.  I would not like to go over the details if possible.

Q:  We need to go over the details.

A:  Well, I have known C.O. Johnson since my first trip Rikers Island.[5]  He studied the school area and escorted the prisoners that were in gay housing. The first time I – well, the first time he ever put his hands on me was on my way back from school at 3:00 in the afternoon.  I don't recall the date of the incident or the month, but I remember there was a group of us . . . someone made a comment about another male C.O. being attractive and he started from the back of the line and hit everybody on the back of the head with an open hand.

Q: Did you suffer physical injury from that incident?

A:  Pain to the back of my head.

Q: Any other physical injury?

A: No.

Q: And then the next incident you can recall? . . .

A: [. . .] me and this officer ended up getting into an argument after the principal placed me in a classroom with derelict inmates.

They jumped me and I brought this to the officer's attention when they did jump me, I brought up the fight – – physically he slapped me to the ground, he slammed me on the back of the head. After this incident they were told to bring me to medical for a post injury report and on the way to medical, as I was explaining to this officer that they just failed to protect me and they had placed me in an unsafe situation, he proceed to punch me in the back of the head, to pull my hair.  He struck me more physically, but the actual specifics I can't recall right now and the injuries I sustained were a lot of

---

[5] Defendant's first trip to Rikers Island was outside of the time period relevant for this proceeding.

> pains [sic] in the back of the head and
> whiplash to the neck.
> Q:   any other injuries you can recall
> at that second incident you described?
> A:   No.
> Q:   Is there a third incident involving
> this particular officer?
> A: Yes. . . . I was in the middle of a
> confrontation, a verbal dispute with an
> officer and he heard it and he came
> over to inject his two cents and I got
> smart with him and he smacked me. . . .
> I had pain to my mouth and I believe
> possibly an abrasion to the inside of
> my mouth, you know, mostly the guards
> are smart enough not to leave marks on
> inmates.

(Pl. Nov. 16, 2007 Dep. at 9-13.)   Plaintiff alleges three
physical incidents with Officer Johnson.   Each of these
alleged incidents involving Officer Johnson will be
examined in turn.

The first incident described appears to be outside the
limitations period as plaintiff stated that she had known
Officer Johnson since her first time in Riker's, a date
which clearly precedes the limitations period.   However,
given the possible ambiguity in the questioning, we will
assume, for the purposes of this summary judgment motion,
that all the incidents happened within the relevant time
period.

Regardless, the first incident as described fails, as
a matter of law, to state facts that could support a claim
of excessive force.   Plaintiff alleges that defendant

20

Johnson struck her, and a number of other inmates, in the back of the head. The only injury plaintiff claims is "pain in the back of my head." (Pl. Nov. 16, 2007 Dep. at 10.) It is settled in this district that an open-handed slap on the back of the head, with no medical evidence and no other evidentiary support of injury, does not rise to the level of a constitutional violation. See Santiago v. C.O. Campisi, 91 F. Supp. 2d 665, 674 (S.D.N.Y. 2000) (holding that an open-hand slap does not rise to the level of excessive force); Boddie, 105 F.3d at 861; Johnson v. Renda, No 96 Civ. 8613, 1997 WL 576035 at *1 (S.D.N.Y. Sep. 15, 1997) (holding that a single slap to plaintiff's face does not amount to a constitutional violation). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 403 U.S. at 9. Plaintiff's third allegation, that defendant Johnson smacked her and possibly caused an abrasion to the inside of her mouth, fails for the same reason.

Plaintiff's description of the second incident initially appears more substantive, but on closer examination it still fails for lack of evidence. First, it is unclear which allegations in particular are against Officer Johnson, as it seems that two different officers were involved. Assuming, arguendo, that the officer who

"slapped" defendant to the ground and "slammed" her head is the same officer that punched her and pulled her hair, there is still not enough evidence of physical injury to maintain an excessive force claim.    Plaintiff does not point to any medical evidence attributing any of these injuries related to the officers, despite stating that she was further assaulted on her way to medical, apparently as a result of an attack by other inmates. (Pl. Nov. 16, 2007 Dep. at 11.)   Nor does plaintiff provide a timeframe for any of these incidents.   Further, plaintiff never made any effort to corroborate any of these assaults by deposing defendant Johnson (or defendant Patterson, who plaintiff alleges in her Declaration witnessed these incidents). (Lopez Decl. at ¶ 20.)    The absence of allegations and evidence of injury, as we have noted above, precludes a plaintiff from prevailing on such a claim.

For example, in the Vatensever case, the plaintiff alleged that a corrections officer slammed his head into a wall. Vatansever v. New York City, No. 01 Civ. 11621, 2005 WL 2396904 *1 (S.D.N.Y. Sept. 28, 2005) (WHP) (granting summary judgment when plaintiff could provide no medical evidence of injuries).    Though not as serious as the assault alleged by the plaintiff in the Vatensever case, we would also expect to find evidence of physical injury if an

assault on plaintiff, involving being slapped to the ground and slammed on the back of the head, as well as having her hair pulled and being punched in the back of the head, occurred, particularly if all of these assaults happened as plaintiff traveled to a medical evaluation.   Id. at *3. However, plaintiff's "voluminous" medical records are devoid of any support for these alleged incidents.   Id.; see also United States v. Potamkin Cadillac Corp., 689 F.2d 379, 381 (2d Cir. 1982) ("The litigant opposing summary judgment ... may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial. Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.") (internal quotation and citation omitted).   Consequently, summary judgment is granted in favor of defendant Johnson.

### e. Captain Ellen Patterson

Plaintiff makes two allegations against Captain Ellen Patterson.   First, she claims that Captain Patterson assaulted her by hitting her in the face with keys; and second, she claims that defendant Patterson witnessed her being attacked by defendant Johnson and failed to intervene.

The first incident is described as follows:

A:   [...] It's C-74 in the school area in
the morning time.   Captain Paterson and
the principal both struck me with keys
in the facial area while I was sitting
in  orientation  class  and  that  left
marks on my face. . . .
Q:   So when you say someone hit you
with keys in your face?
A:   I was sitting there, they both had
keys, Captain Patterson and Principal
Jefferson both had keys.   Jefferson's
were longer, Patterson's were on like a
ring around her belt and I was sitting
at my desk and they are like – first
Captain Patterson and I had a problem
the day before, we had gotten into an
argument and I wanted to complain about
something.
   I don't recall what she said to
me, but she slammed keys on my face,
not slammed, they was [sic] provoking
me to get into it with her.   She nudged
me and hit me with the keys and then
Jefferson came out.   She was actually
more open about assaulting me than
Patterson.   They were both – again, I
don't recall what they were saying, I
was much younger, but they swung the
keys and it hit me in the face.
   Jefferson made it seem more like
an accident, "oh, I'm sorry" and that's
where she sent me – ordered me into a
certain  classroom,  even  though  I
excelled in the class.

(Pl. Nov. 16, 2007 Dep. at 40-41.)   In their moving papers

on their motion for summary judgment, defendants argue that

plaintiff's claims against Captain Patterson were vague and

that  the  alleged  injury  ("left  marks  on  my  face")  was

insufficient.     Apparently  recognizing  the  force  of

defendant's   position,   plaintiff   countered   with   a

declaration asserting that she also received "a bump on my head" from the incident. (Lopez Decl. at ¶ 17.)  As noted above, factual issues created solely by an affidavit crafted for the purposes of opposing a summary judgment motion do not raise issues of material fact.  Neidich v. Estate of Neidich, 222 F. Supp. 2d 357, 368 (S.D.N.Y. 2002) (CM).

Consequently, the issue presented is whether the incident as originally described in plaintiff's deposition is sufficient to state a claim for excessive force.  We assume, arguendo, that there was some contact between Patterson's keys and plaintiff's face.

However, in the absence of any evidence of injury and without any supporting medical records, the incident with the keys does rise to the level of a constitutional violation. See Santiago, 91 F. Supp. 2d at 674; Yearwood, 1998 WL 474073 at *7; see also Roman, 998 F.2d at 105; Boddie, 105 F.3d at 862.

Plaintiff also raises for the first time in her opposition declaration that defendant Patterson witnessed the assault, described above, by defendant Johnson.  Lopez Decl. at ¶ 20.  Curiously, there is no mention of defendant Patterson's involvement in the Johnson incident in plaintiff's deposition testimony, either as she spoke about

25

Johnson or about Patterson.  As noted <u>supra</u>, parties cannot create new factual disputes in response to a motion for summary judgment.  <u>Hayes</u>, 84 F.3d at 619 (2d Cir. 1996). Consequently, this claim against defendant Patterson is also dismissed and summary judgment is granted in favor of defendant Patterson.

### f. Delores Jefferson

As defendant Jefferson's involvement in the alleged incident involving plaintiff's contact with defendant's keys is legally indistinguishable from defendant Patterson's involvement, for the reasons stated above, summary judgment is granted in favor of defendant Jefferson.

### g. Plaintiff's claim for emotional distress

As plaintiff has not shown any issues of material fact sufficient to survive summary judgment on her excessive force claims, her claims for emotional injury are dismissed.  42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); <u>Cox v. Malone</u>, 56 Fed. Appx. 43, (2d Cir. 2003)("Cox had failed to show malicious intent on the part of Simms or anything more that <u>de minimis</u> physical

injury in connection with his Eighth Amendment claim, as required by the Prison Litigation Reform Act, 42 U.S.c. § 1997e(e)").

### ii. Claims against Drs. Kaw Aung and Jane San Jose

Plaintiff endeavors to assert claims of deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment to the Constitution against Drs. Aung and San Jose.

The two-prong test for deliberate indifference to medical need is well established. See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000). First, a plaintiff must show that she has a "serious medical condition," and second, she must show that the medical condition was met with "deliberate indifference." Id. As the Second Circuit did in Cuoco, we assume, for the purposes of this summary judgment motion, that transexualism or Gender Identity Disorder (GID) is a serious medical condition that satisfies the first element of this analysis. Id.

To establish deliberate indifference, "a plaintiff must show 'something more than mere negligence.'" Id. at 106-107 (quoting Weyant v. Okst, 101 F.3d 845, 856 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994))). However, "proof of intent is not required, for the deliberate-

indifference standard 'is satisfied by something less than actions or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. at 106-107. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance v. Amrstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer, 511 U.S. at 837). Even medical malpractice is not deliberate indifference, unless it rises to the level of recklessness. Id. at 703.

The medical indifference claim is centered on plaintiff's claim that she was denied hormone therapy during some of her incarcerations at Rikers. To place the claim in a temporal perspective, it should be noted that plaintiff was incarcerated for four days in December 2002, six days in March 2004, six days in April 2004, fourteen days in September 2004, and thirteen days in June 2005. Consequently, any possible denial of hormones could have been at most for a period of no more than two weeks.

To further contextualize this claim, it should be noted at the onset that plaintiff acknowledges that she was

given hormones "most of the time." (Pl. July 10, 2007 Dep. at 38.) Plaintiff further testified that she was provided hormones during her ARDC incarcerations that occurred prior to her eighteenth birthday. (See Pl. July 10, 2007 Dep. at 38-39.) These include the March 2004 and April 2004 incarcerations.

Moreover, the medical records submitted with defendant's summary judgment motion contain numerous references to plaintiff receiving her medication and/or treatment. Bates numbered document 301 provides evidence that plaintiff was given "Conjugated Estrogens" on December 11-12, 2002. (See also Bates 434-35, 446 (indicating that plaintiff was given the hormone Premarin during her December 2002 incarceration)). The plaintiff also refused psychiatric treatment from a social worker during this visit, since the social worker was not a "psychotherapist." (Bates 444-45, 449.) Plaintiff also was given hormone treatment in April 2004, (Bates 00356-64) and June 2005. (Bates 305, 475.)

Thus, the only period of incarceration for which plaintiff could claim a lack of hormonal treatment is that of September 2004. While defendant points to Bates 261 as showing evidence of no treatment, this document includes the words "Shots for breast" on its face. (Bates 261.)

The entry would appear to indicate hormonal treatment and plaintiff has provided no medical evidence to the contrary. Plaintiff never deposed anyone and defendant provides no evidence of whether or not this refers to treatment. Nor has plaintiff linked this document to either doctor named as a defendant.

To the extent that plaintiff's claim is not read as asserting a total denial of hormonal treatment but as a claim that the levels of hormones prescribed to plaintiff while at Rikers were insufficient to treat her condition, we note that plaintiff has neither submitted nor adduced any medical testimony to support such a claim. Such a claim cannot proceed without medical support. Nor has plaintiff adduced any testimony or submitted any evidence that the doctors at Rikers prescribed these doses with the requisite deliberate indifference or claimed that defendant doctors knew of and disregarded "an excessive risk to inmate safety," or that prescribing these drugs in lower doses posed a risk of substantial harm to plaintiff. Chance, 143 F.3d at 702 (2d Cir. 1998); see also Murray v. U.S. Bureau of Prisons, 106 F.3d 401 (Table), 1997 WL 34677 at *3 (6th Cir. 1997) ("However, where, as here, the prisoner is receiving treatment, the dosage levels of which are based on the considered professional judgment of a

physician, we are reluctant to second-guess that judgment.")

Further, even assuming that plaintiff had supported her claims concerning hormone therapy with evidence, it is worth noting that plaintiff does not necessarily have the right to require the prison to duplicate the private treatment she may have received, and that she was offered psychological therapy which she declined.   (Bates 444-45, 449.); see Murray, 1997 WL 34677 at *3-4. ("It is important to emphasize, however, that [the plaintiff] does not have a right to any particular type of treatment, such as estrogen therapy.... [G]iven the wide variety of options available for the treatment of gender dysphoria and the highly controversial nature of some of those options, a federal court should defer to the informed judgment of prison officials as to the appropriate form of medical treatment.").  While a total denial of hormone therapy to a prisoner for an extended period of time might rise to the level of deliberate indifference, nothing in the record of this case supports an allegation.

In sum, the record of the plaintiff's medical treatment during her numerous, short incarcerations simply does not demonstrate any denial of medical care due to deliberate indifference from doctors or that the treatment

provided posed a substantial risk of serious harm. To the contrary, the documentary record provides ample evidence that plaintiff was provided with extensive treatment.

Furthermore, even if plaintiff had sustained her broad claims, she has failed to connect those broad claims to the two doctors named as defendants. For example, plaintiff points to Bates numbered document 472 to establish that she was given less than the dosage recommended by her attending physician. However, this document is signed by Marshall Tse, MD, not a named defendant. Personal involvement of defendants is required to assess damages under § 1983. Gaston v. Coughlin, 249 F.3d 156, 165 (2d Cir. 2001). Consequently, summary judgment is granted in favor of both defendant Aung and San Jose dismissing plaintiff's claims of medical indifference.

### iii. Claims against Commissioner Martin Horn, Warden Patrick Walsh, and Warden Peter Curcio

Plaintiff does not allege any physical contact by defendants Commissioner Horn, Warden Walsh, or Warden Curcio ("Horn defendants"). Rather, plaintiff alleges that the Horn defendants were involved in "formulating, ratifying, adopting, and/or implementing the policies and procedures that resulted in the violation of her constitutional rights." (Opposition at 23.)

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffit v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). A defendant in a supervisory position may be found to be personally involved in several ways:

> The defendant may have directly participated in the infraction. . . . A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. . . . A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. . . . Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event. . . .

Wright v. Smith, 21 F. 3d 496, 502 (2d Cir. 1994) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)). Additionally, supervisory liability could attach when an official shows "gross negligence" or "deliberate indifference" to the "constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." Id. (citing McCann v. Coughlin, 698 F.2d 112, 125 (2d Cir. 1983)).

Plaintiff claims that defendants violated the Fourteenth Amendment by: (1) refusing to allow her to wear

33

female clothing or undergarments, (2) housing plaintiff
with male inmates and denying her gay housing, and (3)
placing her, without cause, in a classroom with inmates
with disciplinary problems.[6]   Plaintiff has not established
which policies or customs, if any, the Horn defendants have
violated.   Even if we assume that there are policies in
place that were being enforced here, plaintiff does not
articulate any actionable violations of those policies or
that those policies lack a rational basis, which both
parties concede is the applicable standard of review.
Thus, each of these claims fails to state a claim under the
Fourteenth Amendment and consequently summary judgment is
granted in favor of the Horn defendants.

### a. Refusal to allow plaintiff to wear female clothing

As plaintiff points to no court decision that has
found transgender individuals a protected class for the
purposes of Fourteenth Amendment analysis, and the Court
has found none, her claims that she was subjected to
discrimination based on her status as transgender are
subject to rational basis review.[7]   Though plaintiff does

---

[6] Plaintiff also alleges "bias-based assault" but does not point to
any policy or give any evidence of a custom of such assaults that would
subject the Horn defendants to liability under § 1983.
[7] The Ninth Circuit in Gomez v. Maass, 918 F.2d 181 (9th Cir. 1990),
held that a transsexual is not a member of a suspect or quasi-suspect
class entitled to greater than rational basis scrutiny under the equal

not point to any clothing policy utilized at Rikers, we assume for the purposes of this opinion that some policy exists.

Plaintiff also does not point to any authority that suggests that a transgender prisoner has the right to choose the clothing she wears while in prison. In fact, as a general matter, federal courts have in fact held the opposite. Murray, 1997 WL 34677 at *2 (prisoner officials do not violate the Constitution by providing ill-fitting or aesthetically unpleasing clothing); Knop v. Johnson, 667 F. Supp. 467, 475 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988). Further, several rational bases, ranging from a desire to maintain order in prisons through having uniforms to disallowing plaintiff from signaling female sexuality in a male prison readily come to mind. Thus, plaintiff has failed to establish a claim arising from any clothing policy alleged under the Fourteenth amendment.

Further, assuming, arguendo, that some constitutional violation was found, the Horn defendants would certainly be qualifiedly immune. In the absence of any case law

---

protection component of the due process clause. The Ninth Circuit in Holloway v. Arthur Andersen & Co., 566 F.2d 659, 664 (9th Cir. 1977), explained that transsexualism is not a suspect class when plaintiff claimed "to have [been] treated discriminatorily [not] because she is male or female, but rather because she is a transsexual who chose to change her sex."

upholding a claim that a transgender prisoner has the right to choose what clothing she will wear, the Horn defendants could not have violated any of plaintiff's clearly established constitutional or federal rights.   Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).

### b. Housing Plaintiff with Male Inmates

As noted by the Supreme Court, "the practice of federal prison authorities is to incarcerate preoperative transsexuals with prisoners of like biological sex. . . ." Farmer, 511 U.S. at 829.   While the Supreme Court did not take this opportunity to comment on the constitutionality of this practice, and we decline to do so here, it clearly did not state any objection to it on constitutional grounds.   We note that a number of problems could arise by altering this practice and housing biologically male inmates who identify as transgender with the female population, not the least of which would be concerns for the safety of female inmates, and consequently hold this practice or policy as rational.   Further, even if we held this practice unconstitutional, the Horn defendants would be qualifiedly immune for the reasons stated above.

There is another issue present that fits more squarely in the Supreme Court's decision in Farmer.   Generally, plaintiff contends that defendant's denial of plaintiff's

gay housing amounted to deliberate indifference to plaintiff's safety. However, plaintiff cannot maintain this claim. Defendants provide evidence that plaintiff was placed in gay housing or protective custody at each of plaintiff's visits except for a period of three days when plaintiff refused to sign a form indicating she was gay. Plaintiff refutes this evidence by denying that evidence of her housing placements, which includes prison records kept in the regular course of operations marked "protective custody" or "gay/lesbian housing," (See e.g., Bates 244 and 263) supports defendants claims. (Pl. Resp. to Defs.' Local Rule 56.1 Statement at ¶ 44.) Plaintiff does not point the court to any evidence in her deposition or otherwise that these routine business records of her prison stays are inaccurate.

Moreover, on the days where plaintiff was placed in general population, nothing in the record indicates that defendant did this with deliberate indifference to plaintiff's safety. In Farmer, the Supreme Court writes, "we hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Farmer, 511 U.S. at 837. Here, Plaintiff

makes no allegations that any prison official deliberately ignored an excessive risk to her safety by placing her in general population for those three days. Consequently, summary judgment is granted in favor of defendants on plaintiff's claim.

### c. Placing Plaintiff in a Disciplinary Classroom

Plaintiff fails to articulate any evidence supporting her argument that she was placed in a disciplinary classroom in violation of her constitutional rights. She neither articulates any policy or custom which resulted in the placement or any constitutional principle that was violated. Beyond the bald allegation that plaintiff was placed in this classroom without cause, plaintiff fails to adduce any evidence about the process by which she was placed in a disciplinary classroom or how that process was in violation of her due process rights. Consequently, summary judgment is granted for defendants on this claim.

### iv. Claims against the City of New York

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). As discussed above, plaintiff argues that unidentified and unnamed policies or customs concerning transgender inmates violate the Constitution. As we have found that these policies do not violate any of plaintiff's rights under the Constitution or federal law, plaintiff cannot sustain a Monell claim against the City of New York. Thus, summary judgment is granted in favor of the City.

### D. **Pendant State and City Law Claims**

As we have granted summary judgment in favor of defendants on all of plaintiff's federal claims, we decline to exercise supplemental jurisdiction over plaintiff's city and state law claims. 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction"). Consequently, those claims are dismissed without prejudice.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted and the Clerk of the Court is respectfully requested to close this case on the Court's docket.

**SO ORDERED.**

Dated:     New York, New York
           January 29, 2009

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE